UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| 5J'S HOLDING, LLC, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:22CV858 JAR |
| ) | |
| OLD SOUTH TRADING CO., LLC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Edwin N. Church, Jr.'s Motion to Dismiss [ECF No. 72]. Plaintiffs filed their response in opposition. The Motion is fully briefed and ready for disposition. For the reasons set forth below, Defendant's Motion will be granted because the Court lacks jurisdiction over him pursuant to Federal Rule of Civil Procedure 12(b)(2).

**Background and Facts**

On August 17, 2022, Plaintiffs filed this action against Defendants Old South Trading Company, LLC ("Old South"), Brendan Church ("Brendan") and Edwin N. "Chuck" Church, Jr. ("Defendant"). Plaintiffs' allegations against Defendant relate to his solicitations for investments in Old South.

Defendant now moves to dismiss Plaintiffs' Fourth Amended Complaint [ECF No. 71] against him for the following reasons: (i) this Court lacks personal jurisdiction over him pursuant to Federal Rule of Civil Procedure 12(b)(2); (ii) this District is an improper venue under Federal Rule of Civil Procedure 12(b)(3); and (iii) Counts I, II, III, IV and V fail to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs' Fourth Amended Complaint, in pertinent part, alleges the following:[1]

At the beginning of the COVID-19 pandemic, Defendant and Brendan, who are South Carolina residents, began raising funds for Brendan's business, Old South, to import protective equipment ("PPE") to store and sell in the United States. Old South investments were made in the form of demand notes, and its investors received ten percent interest each month, with the option to demand repayment of the principal amount of their note upon proper notice. Defendant Old South is incorporated in Tennessee, and Brendan is its sole member.

Defendant, a Chick-fil-A franchisee, is Brendan's dad and began to solicit investments from other Chick-fil-A operators for Old South through a Facebook group named "Chick-fil-A Operator Forum." Defendant, who invested in Old South himself, used this Facebook group four times to solicit investments and personally guaranteed that investments were safe. The dates that Defendant posted these solicitations in the Chick-fil-A Facebook group were on April 8, 2020, May 11, 2020, August 19, 2020, and May 26, 2021. Defendant directed interested investors, like Plaintiffs, to execute promissory notes for the benefit of Brendan and Old South. Plaintiffs are residents of various states, including Missouri, California, Texas, and Iowa. Collectively, Plaintiffs loaned approximately $2,814,500.00 in principal alone.

During the timeframe Defendant was soliciting investments, Defendant was aware of a legal dispute against Old South that resulted in the business owing $5.5 million to previous investors, pursuant to a Resolution Agreement entered into on May 5, 2020. The Resolution Agreement was signed by Brendan on behalf of Old Church. After Old South failed to pay the amount it owed, arbitration was commenced, and an award was entered against Old South in the

---

[1] Unless otherwise noted, all facts in this section are alleged in Plaintiffs' Fourth Amended Complaint and accepted as true for purposes of this motion only. *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017).

amount of $5.5 million. After Old South still refused to pay the money, a lawsuit was filed against Old South and several of its noteholders in March of 2022. Defendant and Brendan did not disclose this legal dispute to investors until after the lawsuit was filed.

For instance, on May 14, 2020, Plaintiff Scott Swindler, a Missouri resident, reached out to Defendant to invest in Old South. Defendant facilitated Plaintiff Swindler's investment and did not mention Old South's obligation of monies owed under the Resolution Agreement.

On August 7, 2020, Defendant sent an email to Old South investors that the amount of interest monthly would be reduced from ten percent to two percent. Defendant did not mention the Resolution Agreement as the reason for the reduction and assured investors that "the business is still healthy and thriving, just wanted to gauge interest on how many would continue loaning money."

On August 26, 2020, after Plaintiff Swindler inquired if Old South was still taking investors, Defendant sent him the forms so Plaintiff Swindler's mother could invest. On December 18, 2020, Defendant facilitated an investment of $150,000 from Anthony Johnson of Plaintiff 5J's Holdings, LLC ("5J"). 5J is incorporated in Missouri, and its members reside in Missouri and Arizona. At no point did Defendant mention the Resolution Agreement or arbitration to Plaintiffs Swindler or Johnson.

On February 7, 2021, Brendan emailed Old South's investors that they had been selected as an "Authorized Distributor" for Cardinal Health, in addition to others, such as Kimberly Clark, 3M, and Intco/Basic Gloves. On February 11, 2021, Plaintiff Swindler asked about investing more money, and again was not told about the legal issues.

On March 11, 2022, Brendan disclosed the lawsuit mentioned above to Old South's investors via email, referring to it as "frivolous." On March 12, 2022, Defendant emailed the

investors who had been named in the lawsuit, echoing Brendan's claim it was "frivolous" and "not final." Update emails about the lawsuit were sent to Old South's investors by Brendan on April 1 and June 9, 2022, and by Defendant on May 31, 2022.

On May 20, 2022, Johnson of Plaintiff 5J sent a request to Brendan to refund its $200,000 demand notes. He did not receive a response. On June 4, 2022, Johnson sent another request and again, did not receive a response.

Plaintiffs attached the relevant promissory notes and email communications as exhibits to their Fourth Amended Complaint. The notes reflect that Brendan signed each one on behalf of Old South.

## Legal Standards

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead 'sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011)). Plaintiffs' prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted). The Court views the evidence in a light most favorable to Plaintiffs and resolves factual conflicts in Plaintiffs' favor; however, Plaintiffs carry the burden of proof, and that burden does not shift to Defendants. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).

Personal jurisdiction may be either general or specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "General jurisdiction exists where a defendant is essentially at home in the forum state, whereas specific

jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims, namely those that arise out of or relate to the defendant's contacts with the forum." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 952 (8th Cir. 2022). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011).[2]

Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment. *Id.* (emphasis added).[3] These are separate inquiries, and both must be met to allow personal jurisdiction over a foreign defendant. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475–76 (8th Cir. 2012). Due process requires that there be "sufficient minimum contacts between a defendant and the forum state so that jurisdiction over a defendant with such contacts may not offend traditional notions of fair play and substantial justice." *Aly v. Hanzada for Import & Export Co.,* LTD, 864 F.3d 844, 849 (8th Cir. 2017) (citations and internal quotation marks omitted).

Sufficient minimum contacts exist when "defendant's conduct and connection with the

---

[2] Here, Plaintiffs do not argue that Defendant, a South Carolina resident, is subject to general jurisdiction in Missouri.

[3] As discussed below, because the Court finds that due process does not permit the exercise of specific personal jurisdiction over Defendant, it will not address the applicability of Missouri's long-arm statute.

forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). In assessing Defendant's reasonable anticipation, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). Importantly, the relationship between Defendant and the action must arise out of contacts that he creates with the forum state, and contacts between Plaintiffs and the forum state do not satisfy this inquiry. *Id*.

In assessing Defendant's minimum contacts with the forum state, the Court must consider five factors: "1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties." *Fastpath,* 760 F.3d at 821 (quoting *Dever v. Hentzen Coatings*, 380 F.3d 1070, 1073-74 (8th Cir. 2004)). Courts give "significant weight to the first three factors." *Id.* The third factor speaks to the particular question of specific jurisdiction. *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996). The fourth and fifth factors "carry less weight and are not dispositive." *Downing v. Goldman Phipps*, PLLC, 764 F.3d 906, 912 (8th Cir. 2014) (quoting *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006)). "In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Enterprise Rent-A-Car Co. v.*

6

*U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004) (citing *Calder v. Jones*, 465 U.S. 783, 788 (1984)).

**Discussion**

The Court will address the first three factors, the nature, quality, and quantity of Defendant's contacts with the state of Missouri, together. Plaintiffs claim these factors support them because Defendant deliberately reached out to potential investors that he knew lived, worked, and held assets in Missouri and he used them to raise money for Old South and Brendan. Defendant then facilitated the receipt of money from the Missouri Plaintiffs more than once, repeatedly reached out to them in order to solicit investments and communicated business updates.

The Fourth Amended Complaint clearly supports that Defendant facilitated monetary investments from Plaintiff Scott Swindler, a Missouri resident, and Plaintiffs 5J and Bruce Investments, Missouri businesses, after soliciting his fellow Chick-fil-A investors in a Facebook group on behalf of Old South. Defendant then assisted with the facilitation of the promissory notes for Plaintiffs Swindler, 5J and Bruce Investments. ECF No. 71 at Exhibits 30, 32-34. Defendant emailed them instructions on how to execute those notes and instructed them on how to wire their funds to Old South. *Id*. Defendant also supported Old South's business potential, asserting it was reliable and successful. *Id.* Plaintiff Swindler executed four promissory notes for himself individually and for his Missouri-based trusts on September 1, 2020 (two notes), and March 4 and December 10, 2021. *Id.* at Exhibits 1-4. Plaintiff 5J executed two promissory notes through Johnson on December 19, 2020, and February 18, 2021. *Id.* at Exhibits 5-6. Plaintiff Bruce Investments executed six promissory notes in 2021 on April 26, June 2, July 20, November 24, December 9 and in 2022 on January 7. *Id.* at Exhibits 8-13. Brendan signed all of

the promissory notes on behalf of Old South, and the notes reflected the mailing address of the investor. Importantly, Chuck did not sign any of the notes.

However, none of this conduct was uniquely or expressly aimed at Missouri. Defendant never traveled to Missouri, nor did he just target Missouri residents for investments. He also never sent goods or services there. The promissory notes attached to Plaintiffs' Fourth Amended Complaint show investors from other states, including California, Texas, and Iowa. Defendant clearly used the Chick-fil-A Facebook group to solicit investments for Old South, but there is no factual support that Defendant deliberately reached out to potential investors in Missouri only. The common ground between the individuals had nothing to do with where they resided, it was that they were Chick-fil-A franchisees.

As Defendant correctly points out, the United States Supreme Court's decision in *Walden v. Fiore* is instructive. 571 U.S. 277, 284-85 (2014). In *Walden*, Plaintiffs brought a tort action against the defendant Drug Enforcement Administration agent in their home state of Nevada after the agent seized their funds in Atlanta. *Id.* at 281. The Supreme Court held that Nevada lacked personal jurisdiction over the agent, despite his knowledge that plaintiffs were Nevada residents, because none of his activities took place in Nevada. *Id.* at 288. "[The agent's] actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 289.

The Supreme Court explained:

> …[T]he relationship must arise out of contacts that the "defendant himself" creates with the forum State. *Burger King Corp.,* [] 471 U.S. [at] 475 []. Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. *See World–Wide Volkswagen Corp., supra,* at 291–292 []. We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)

8

>   ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). We have thus rejected a plaintiff's argument that a Florida court could exercise personal jurisdiction over a trustee in Delaware based solely on the contacts of the trust's settlor, who was domiciled in Florida and had executed powers of appointment there. *Hanson[]*, 357 U.S. [at] 253 []. We have likewise held that Oklahoma courts could not exercise personal jurisdiction [] over an automobile distributor that supplies New York, New Jersey, and Connecticut dealers based only on an automobile purchaser's act of driving it on Oklahoma highways. *World–Wide Volkswagen Corp.*, *supra*, at 298, 100 S.Ct. 559. Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be "decisive in determining whether the defendant's due process rights are violated." *Rush*, 444 U.S., at 332, 100 S.Ct. 571.

*Id.* at 284-85.

Plaintiffs rely too strongly on *their* contacts with Missouri. That is not the legal standard. The inquiry is analyzed with regard to the contacts that Defendant *himself* creates with the forum. *Id.* at 276. "The plaintiff cannot be the only link between the defendant and the forum." *Id.* at 289. Plaintiffs certainly experienced injury in Missouri, but that alone is not enough to find jurisdiction. *See Fastpath*, 760 F.3d at 822 ("That an Iowa company felt [defendant's] breach does not mean that an Iowa court has jurisdiction over the non-resident defendant consistent with due process."). For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284 (emphasis added). To find otherwise would "improperly attribute[ ] a plaintiff's forum connections to the defendant and make[ ] those connections decisive in the jurisdictional analysis." *Id.* (internal quotation marks omitted).

Defendant's emails and assistance with securing the notes here do not create a "substantial connection" to Missouri sufficient to subject him to personal jurisdiction in the state. See *Viasystems, e.g.,* 646 F.3d at 594 (no personal jurisdiction where non-resident defendant's contacts consisted of scattered emails, phone calls, and a wire-transfer to forum state); *Digi–Tel*

9

*Holdings, Inc. v. Proteq Telecomms*. (PTE), Ltd., 89 F.3d 519, 523 (8th Cir.1996) (affirming district court's dismissal for lack of personal jurisdiction where non-resident defendant's contacts with forum state consisted of numerous faxes and letters, several phone calls in connection with the contract in dispute, and choice-of-law provision). Further, nothing suggests that Defendant's solicitation was actively, exclusively, or even predominantly targeted at Missouri investors. Instead, Defendant's contacts with Missouri were merely "incidental" and did "not constitute a deliberate and substantial connection with the state such that [Defendant] could reasonably anticipate being haled into court there." *Viasystems*, 646 F.3d at 594 (quoting *Burger King*, 471 U.S. at 474–75). Thus, the nature, quality, and quantity factors favor Defendant's position that the Court lacks personal jurisdiction as his contacts with Missouri are not sufficient to demonstrate purposeful availment of the forum state.

For the fourth factor, while Missouri has an interest in providing its residents with a forum, that interest "cannot make up for the absence of minimum contacts." *Digi–Tel*, 89 F.3d at 525. The same is true of the last factor, party convenience. Missouri may be a more convenient forum for some of the Plaintiffs, but that does not mean that Missouri courts have personal jurisdiction over Defendant. Therefore, this Court cannot exercise specific jurisdiction over Defendant as due process requires that a cause of action arise out of or relate to his conduct in a forum state; here, Defendant's conduct is simply not sufficient.

Because the Court lacks jurisdiction over this matter, it does not address Defendant's alternative requests relating to venue under Federal Rule of Civil Procedure 12(b)(3) and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Conclusion

For the reasons set forth above, the Court finds that the exercise of personal jurisdiction

10

over Defendant does not comport with due process. Therefore, the Court lacks jurisdiction over this matter and will grant Defendant's Motion to Dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [ECF No. 72] is **GRANTED** as to Defendant Edwin N. Church Jr. only.

Dated this 27th day of September, 2023.

*/s/ John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**